[Civ. No. 48029. Second Dist., Div. Three. Dec. 29, 1976.]

STARTRACK, INC., et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.
[And 8 other actions.]*

---

*Sail'er Inn, Inc. v. Pitchess; Alhar Enterprises, Inc. v. County of Los Angeles; Butker v. Pitchess; Taylor v. Pitchess; First King, Inc. v. Pitchess; Scott v. Pitchess; T.R. & R. Corp. v. Pitchess; Fero v. Pitchess.

452

**COUNSEL**

John H. Larson, County Counsel, and Eric R. Young, Deputy County Counsel, for Defendants and Appellants.

Martin J. Barab, Linda T. Abrams, Kenneth P. Scholtz, Manuel H. Miller, Hertzberg, Kaplan & Koslow, Joshua Kaplan, Flier, Ross & Barens and Stephen R. Kahn for Plaintiffs and Respondents.

## OPINION

COBEY, J.—Defendants, County of Los Angeles and its sheriff, Peter J. Pitchess, appeal from minute orders granting preliminary injunctions in favor of plaintiffs who operate nine commercial establishments providing nude or partially nude entertainment or food or beverage service of the type covered by Penal Code sections 318.5 and 318.6.[1] The appeals lie. (Code Civ. Proc., § 904.1, subd. (f).)

Plaintiffs are Startrack, Inc., Sail'er Inn, Inc., Alhar Enterprises, Inc., Ed Butker, Jack E. Taylor, First King, Inc., Robert R. Scott, T. R. & R. Corporation, and Jack Fero. Their separate actions have been consolidated.

Generally these plaintiffs operate establishments which meet the specific physical requirements for a theater under the three ordinances herein challenged, namely, Los Angeles County Ordinances Nos. 9884,

---

[1]Section 318.5 reads: "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a county or city, if such ordinance directly regulates the exposure of the genitals or buttocks or of the breasts of any person who acts as a waiter, waitress, or entertainer, whether or not the owner of the establishment in which the activity is performed employs or pays any compensation to such person to perform such activity, in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment. [¶] The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances. [¶] This section shall be known and may be cited as the 'Quimby-Walsh Act.'"

Section 318.6 reads: "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county, if such ordinance relates to any live acts, ·demonstrations, or exhibitions which occur in public places, places open to the public, or places open to public view and involve the exposure of the private parts or buttocks of any participant or the breasts of any female participant, and if such ordinance prohibits an act or acts which are not expressly authorized or prohibited by this code. [¶] The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

9885, 11199,[2] and are "primarily devoted to theatrical performances," but they have only county entertainment licenses instead of county theater licenses. Thus, prior to the enactment of Ordinance No. 11199 in 1975 their establishments apparently were considered exempt from the 1969 ordinances by reason of the second paragraph of each of the enabling statutes.

The two 1969 ordinances as amended by the 1975 ordinance, however, were construed by defendant sheriff to require that plaintiffs hold county theater licenses in order to continue providing lawfully the nude or partially nude entertainment or food or beverage service that they had been furnishing their patrons. This threat of imminent enforcement of these ordinances, as so interpreted, gave rise to this preventive litigation.

[2]Ordinance No. 9884 reads in pertinent part:
"Sec. 1. *Legislative Authorization.* This ordinance is adopted pursuant to Sections 318.5 and 318.6 of the Penal Code. All words used in this ordinance which also are used in the said Sections 318.5 and 318.6, are used in the same sense and mean the same as the same respective words used in the said Sections 318.5 and 318.6 of the Penal Code.
"Sec. 2. *Theater—Definition.* As used in this ordinance and in Sections 318.5 and 318.6 of the Penal Code, 'theater' means a building, playhouse, room, hall or other place having a permanent stage upon which movable scenery and theatrical or vaudeville or similar performances are given, permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, whose primary function is to give such performances, and for which a county license for a theater is in full force and effect. This definition does not supersede the provisions of Section 1 of this ordinance.
"Sec. 3. *Prohibition.* Every person is guilty of a misdemeanor who: (a) Exposes his or her private parts or buttocks or employs any device or covering which is intended to simulate the private parts or pubic hair while participating in any live act, demonstration, or exhibition in any public place, place open to the public, or place open to public view, or while serving food or drink or both to any customer, or (b) Permits, procures or assists any person to so expose himself or herself, or to employ any such device.
"Sec. 4. *Exception.* This ordinance does not apply to:
(a) A theater, concert hall, or similar establishment which is primarily devoted to theatrical performances.
(b) Any act authorized or prohibited by any state statute. . . ."
    Ordinance No. 9885 reads in pertinent part:
"Sec. 1. *Legislative Authorization.* This ordinance is adopted pursuant to Sections 318.5 and 318.6 of the Penal Code. All words used in this ordinance which also are used in the said Sections 318.5 and 318.6, are used in the same sense and mean the same as the same respective words used in the said Sections 318.5 and 318.6 of the Penal Code.
"Sec. 2. *Theater—Definition.* As used in this ordinance and in Sections 318.5 and 318.6 of the Penal Code, 'theater' means a building, playhouse, room, hall or other place having a permanent stage upon which movable scenery and theatrical or vaudeville or similar performances are given, permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, whose primary function is to give such performances, and for which a county license for a theater is in full force and effect. This definition does not supersede the provisions of Section 1 of this ordinance.
"Sec. 3. *Prohibition.* Every female is guilty of a misdemeanor who while participating in any live act, demonstration, or exhibition in any public place, place open to the public,

The injunctions that have been ordered restrain temporarily the enforcement of the three ordinances against plaintiffs. The primary reason why the trial court ordered these injunctions was its conclusion that both of the earlier ordinances, particularly as amended by the later ordinance, unconstitutionally intrude upon an area of regulation preempted by the state. (See *In re Lane,* 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897]; *In re Moss,* 58 Cal.2d 117, 118-119 [23 Cal.Rptr. 361, 373 P.2d 425].) Under this view these ordinances by specifically defining terms left undefined in the enabling statutes—namely theater, concert hall, similar establishment—have unconstitutionally broadened "the

---

or place open to public view, or while serving food or drink or both to any customer:

(a) Exposes any portion of either breast below a straight line so drawn that both nipples and all portions of both breasts which have a different pigmentation than that of the main portion of the breasts are below such straight line, or

(b) Employs any device of covering, which is intended to simulate such portions of the breast, or

(c) Wears any type of clothing so that any portion of such part of the breast may be observed.

"Sec. 4. *Accessories.* Every person is guilty of a misdemeanor who permits, counsels, or assists any person to violate any provision of this ordinance.

"Sec. 5. *Exception.* This ordinance does not apply to:

(a) A theater, concert hall, or similar establishment which is primarily devoted to theatrical performances.

(b) Any act authorized or prohibited by any state statute. . . ."

Both of these ordinances took effect on November 7, 1969.

The amendatory ordinance No. 11199 reads:

"SECTION 1. Section 2 of Ordinance No. 9884 is amended to read as follows:

"Sec. 2. Theater, concert hall, similar establishment—Definition. As used in this ordinance and in Sections 318.5 and 318.6 of the Penal Code, 'theater,' 'concert hall,' and 'similar establishment' mean a building, playhouse, room, hall or other place having a permanent stage upon which movable scenery and theatrical or vaudeville or similar performances are given, permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, whose primary function is to give such performances, and for which a county license for a theater is in full force and effect. This definition does not supersede the provisions of Section 1 of this ordinance.

"SECTION 2. Section 2 of Ordinance No. 9885 is amended to read as follows:

"Sec. 2. Theater, concert hall, similar establishment—Definition. As used in this ordinance and in Sections 318.5 and 318.6 of the Penal Code, 'theater,' 'concert hall,' and 'similar establishment' mean a building, playhouse, room, hall or other place having a permanent stage upon which movable scenery and theatrical or vaudeville or similar performances are given, permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage, whose primary function is to give such performances, and for which a county license for a theater is in full force and effect. This definition does not supersede the provisions of Section 1 of this ordinance"

This ordinance became effective on September 19, 1975.

The specific physical requirements for a theater, concert hall or similar establishment under section 2, as amended, of the basic ordinances are: (a) a permanent stage, (b) movable scenery, (c) permanently affixed seats so arranged that a body of spectators can have an unobstructed view of the stage.

narrow exceptions" (see *Lancaster* v. *Municipal Court,* 6 Cal.3d 805, 808 [100 Cal.Rptr. 609, 494 P.2d 681]) for local regulation permitted by these statutes.

Defendants rejoin that our Supreme Court in *Crownover* v. *Musick,* 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497], decided that substantially similar and identical ordinances of respectively, the County and the City of Sacramento (*id.* at pp. 412-413, fns. 6, 7; pp. 414-416, fn. 9), were constitutional in this respect. The high court said, ". . . the various ordinances . . . follow closely the essential wording of the statutes and by their language conform in scope to the designated regulatory area over which the state has yielded its preemptive claims. Thus the ordinances directly regulate conduct within the delineated statutory limits." (*Id.* at p. 418.)

If the quoted language constitutes a holding by our Supreme Court that ordinances of the same or substantially the same wording as those before it in *Crownover* do not violate article XI, section 7, of the California Constitution, then the trial court erred jurisdictionally in not following this holding. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The Supreme Court gave no rationale, however, for the conclusions which we have just quoted regarding the constitutionality in this respect of such ordinances. An examination of the ordinances themselves, though, suggest a reason. In each of the basic challenged ordinances as amended, the words "theater, concert hall, similar establishment" have two separate and distinct meanings. Under section 1 of each such ordinance these words have the same broad, ordinary, specifically undefined meanings that they have in the enabling statutes. (See Pen. Code, §§ 4, 7, subd. 16; *People* v. *Lovelace,* 97 Cal.App. 228, 230 [275 P. 489]; *Gayer* v. *Whelan,* 59 Cal.App.2d 255, 262 [138 P.2d 763].) In section 2 of each such ordinance they are given a common, specific and comparatively narrow meaning. But section 2 of each such ordinance further provides that its definition "does not supersede the provisions of section 1 of this ordinance."

■ Thus, to come within the exemption from local regulation provided by the two statutes, an establishment must come within *either* the provisions of section 1 or of section 2 of the two basic challenged ordinances as amended by the third ordinance. *It does not have to come*

*within both.* In other words, by reason of the last sentence in section 2 of both basic ordinances as amended, neither basic ordinance intrudes upon the area of preempted state control and therefore both basic ordinances as amended by the third ordinance are constitutional so far as preemption is concerned.[3]

This means, of course, that defendant sheriff was mistaken in his interpretation and attempted enforcement of the basic ordinances as requiring that establishments coming within their scope qualify for exemption therefrom exclusively under section 2 thereof. So long as plaintiffs' establishments come within section 1 thereof, they are exempt therefrom without compliance with the provisions of section 2 thereof. In other words, among other things, plaintiffs' establishments presumably do not need a theater license to be so exempt.

Defendants contend that since we have just held the challenged ordinances to be constitutional, we must reverse the orders under appeal pursuant to Code of Civil Procedure section 526, 2d subdivision 4, and Civil Code section 3423, subdivision 4. ■ We do not agree. As we have just indicated, defendant sheriff's threatened enforcement of the challenged ordinances was both mistaken and illegal. Defendant sheriff attempted to apply these ordinances to plaintiffs' establishments though they were presumably exempt therefrom under section 1 of the basic ordinances. Injunctive relief may be granted against illegal enforcement of valid ordinances. (See *MacLeod* v. *City of Los Altos,* 182 Cal.App.2d 364, 369-370 [6 Cal.Rptr. 326]; *Eaton* v. *Klimm,* 217 Cal. 362, 371-373 [18 P.2d 678].)

## DISPOSITION

The orders granting the preliminary injunctions are modified so that they restrain only the enforcement of the requirements of section 2 of Los Angeles County Ordinances Nos. 9884 and 9885 as amended by Los Angeles County Ordinance No. 11199 against plaintiffs so long as their

---

[3]This interpretation of the basic ordinances before us perhaps explains our Supreme Court's view in *Crownover* v. *Musick, supra,* 9 Cal.3d at pages 412-413, 414, that ordinances of substantially this wording are essentially the same as the Orange County ordinance before it which merely incorporated the applicable language of the enabling statutes.

establishments remain exempt from such basic ordinances pursuant to section 1 thereof. As so modified, they are affirmed.

Allport, Acting P. J., and Potter, J., concurred.