| NEIGHBORS OF 200 HENRY CLAY AVENUE AND AUDUBON RIVERSIDE NEIGHBORHOOD ASSOCIATION | * | NO. 2021-CA-0387 |
|---|---|---|
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| VERSUS | * | STATE OF LOUISIANA |
| THE BOARD OF ZONING ADJUSTMENT OF THE CITY OF NEW ORLEANS | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-10464, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Regina Bartholomew-Woods)

Henry W. Kinney, III
Jordan S. Varnado
KINNEY, ELLINGHAUSEN & DESHAZO
1250 Poydras Street, Suite 2450
New Orleans, LA 70113-1806

COUNSEL FOR PLAINTIFFS/APPELLANTS, NEIGHBORS OF 200 HENRY CLAY AVENUE & AUDUBON RIVERSIDE NEIGHBORHOOD ASSOCIATION

Shawn Lindsay
DEPUTY CITY ATTORNEY
Daniel T. Smith
ASSISTANT CITY ATTORNEY
Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street, Suite 5E03
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLEE, CITY OF NEW ORLEANS

**AFFIRMED IN PART; VACATED IN PART; REMANDED**
**JANUARY 26, 2022**

*TFL*

*RLB*

*RBW*

The Board of Zoning Adjustments of the City of New Orleans made a zoning verification regarding the placement of a new helistop being constructed for use by Children's Hospital. Plaintiffs sought review of the determination. The City filed exceptions of lack of procedural capacity and insufficiency of service of process because plaintiffs neither named the City as a party, nor served the City. The trial court granted the exceptions and dismissed plaintiffs' claims without prejudice.

We find that the Board of Zoning Adjustments of the City of New Orleans is an administrative board that is not a distinct juridical entity from the City of New Orleans. As such, plaintiffs were required to name the City as the proper party and serve same. However, the Board of Zoning Adjustments should have been permitted the opportunity to amend and attempt to cure the defects, as required by law. Accordingly, we affirm the trial court's granting of the City's two exceptions, but vacate the reversal without prejudice, and remand for proceedings consistent with this opinion.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The owner of 200 Henry Clay Avenue, near Children's Hospital, began

construction on a new building that included new helicopter landing facilities.[1] A zoning verification request was submitted in 2020 to the Office of Safety and Permits. The zoning verification was issued by the chief zoning official and classified the new landing as a helistop.

Audubon Riverside Neighborhood Association and Neighbors of 200 Henry Clay Avenue (collectively "Plaintiffs") sought an appeal of the chief zoning official's zoning verification decision. However, the Board of Zoning Adjustment ("BZA") of the City of New Orleans upheld the zoning verification. Plaintiffs then filed a Verified Petition for Appeal from Proceedings Before the City of New Orleans Board of Zoning Adjustment against the BZA to appeal the BZA's November 9, 2020 opinion upholding the zoning verification. Plaintiffs contended that the BZA's actions violated the City's Comprehensive Zoning Ordinance. Plaintiffs also maintained that the new facility is a heliport, not a helistop.[2]

Plaintiffs named the BZA as the only party and requested service upon the BZA Chairperson. The City of New Orleans filed a dilatory exception of lack of procedural capacity and a declinatory exception of insufficiency of service of process asserting that the BZA possessed no power to sue or be sued and that Plaintiffs failed to serve the City. The trial court granted both of the City's exceptions and dismissed Plaintiffs' petition without prejudice.

Plaintiffs filed a Notice of Intent for Supervisory Review and Request for Stay. The trial court denied the stay. This Court denied the writ.[3] Plaintiffs' Motion for Devolutive Appeal followed.

---

[1] The detailed specifications are not at issue in this appeal.
[2] The substance regarding the propriety of the classification of the helicopter facilities is not before this Court on appeal.
[3] *Neighbors of 200 Henry Clay Avenue and Audubon Riverside Neighborhood Ass'n v. Bd. of Zoning Adjustment*, 21-0176 (La. App. 4 Cir. 4/21/21).

2

On appeal, Plaintiffs maintain the trial court erred by 1) granting the exception of lack of procedural capacity, 2) granting the exception of insufficiency of service of process, and 3) dismissing the petition without prejudice.

## *MOTION TO DISMISS*

The City filed a Motion to Dismiss Plaintiffs' devolutive appeal with this Court averring that the appeal was governed by the law of the case doctrine.

This Court explained the law of the case doctrine as follows:

> The law of the case doctrine refers to "(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case." *Petition of Sewerage and Water Bd. of New Orleans*, 278 So.2d 81, 83 (La.1973); *Louisiana Land and Exploration Co. v. Verdin*, 95–2579, pp. 3–4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65. This doctrine "may bar redetermination of a question of law or a mixed question of law and fact during the course of a judicial proceeding." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). Thus, the law of the case doctrine is the proper procedural principle, as opposed to *res judicata*, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case. *Posey v. Smith*, 453 So.2d 1016 (La.App. 3 Cir.1984). The policy reasons behind this doctrine include: (i) avoiding relitigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 330, 256 So.2d 105, 107 (1971).

> Unlike the statutory doctrine of *res judicata*, the jurisprudential doctrine of law of the case is a discretionary guide that will not be applied inflexibly. "Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice." *Petition of Sewerage and Water Bd.*, 278 So.2d at 83. In addition to the latter

exception for palpable error, the jurisprudence has recognized two other contexts in which this discretionary doctrine will not be applied. First, it will not be applied to "supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions." *Babineaux v. Pernie–Bailey Drilling Co.*, 261 La. 1080, 1094, 262 So.2d 328, 332–33; *Landry v. Blaise, Inc.*, 2002–0822 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 666. Second, it will not be applied when the underlying, operative facts upon which the court's prior decision was based have changed. *Morrison v. C.A. Guidry Produce*, 2003–0307 (La.App. 3 Cir. 10/01/02), 856 So.2d 1222, 1226–27. Under the "law of the case" doctrine, an appellate court ordinarily will not reconsider its own rulings of the law in the same case. *See Liberty Bank and Trust Company v. Dapremont*, 2002–1504 (La.App. 4 Cir. 2/11/ 03), 844 So.2d 877, (see p. 892); *Evans v. Nogues*, 99–2761, p. 4 (La.App. 4 Cir. 9/13/00), 775 So.2d 471, 474; *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701, 705 (La.App. 1 Cir.). Clearly, there was no permanent injunction in this matter, nor was there a "final decree" as to the merits of any particular assertion made by the appellant. Moreover, a preliminary injunction is a summary proceeding and merely requires a prima facie showing of a good chance to prevail on the merits. *Mary Moe, L.L.C., v. Louisiana Bd. Of Ethics*, 03–2220, (La.4/14/04), 875 So.2d 22.

*Bank One, Nat. Ass'n v. Velten*, 04-2001, pp. 5-7 (La. App. 4 Cir. 8/17/05), 917 So. 2d 454, 458-59.

"[T]he denial of a writ has no precedential value." *Lake Air Capital II, LLC v. Perera*, 15-0037, p. 7 (La. App. 4 Cir. 5/13/15), 172 So. 3d 84, 88. Moreover,

if we merely deny a writ application, without considering the substance of the issue raised, simply because we do not believe that the situation is appropriate for our exercise of our supervisory jurisdiction, then there is no 'decision' as to that issue to be given effect as the law of the case.

*Tsatsoulis v. City of New Orleans*, 99-2544, p. 2 (La. App. 4 Cir. 8/30/00), 769 So. 2d 137, 138.

The writ decision issued in this matter was a writ denied with no comment

4

on the substance or appellate review of same. As such, we do not find that the law of the case doctrine applies in this case, and the Motion to Dismiss is denied.

## *LACK OF PROCEDURAL CAPACITY*

Plaintiffs contend that the trial court erred by granting the City's exception of lack of procedural capacity because the BZA is a quasi-judicial entity distinct from the City of New Orleans.

The exception of lack of procedural capacity is a dilatory exception. La. C.C.P. art. 926. A dilatory exception "merely retards the progress of the action." La. C.C.P. art. 923.

"Whether a party has the power to sue or be sued is an issue typically raised in the dilatory exception of lack of procedural capacity." *Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, 18-0726, p. 7 (La. App. 4 Cir. 5/8/19), 272 So. 3d 917, 925. "The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity." *Rain CII Carbon, L.L.C. v. Recon Eng'g, Inc.*, 18-0916, p. 4 (La. App. 4 Cir. 5/1/19), 270 So. 3d 785, 788 (*quoting English Turn Prop. Owners Ass'n v. Taranto*, 16-0319, p. 6 (La. App. 4 Cir. 4/19/17), 219 So. 3d 381, 387). "The exception 'tests a party's legal capacity to bring suit.'" *Rain*, 18-0916, p. 4, 270 So. 3d at 788 (quoting *Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church # 1 of Revilletown Park*, 16-0151, p. 5 (La. App. 1 Cir. 10/31/16), 207 So. 3d 414, 417).

"'The determination of whether a party has the procedural capacity to sue or be sued involves a question of law.'" *Downtown*, 18-0726, p. 7, 272 So. 3d at 925 (quoting *Woodard v. Upp*, 13-0999, p. 5 (La. App. 1 Cir. 2/18/14), 142 So. 3d 14,

5

18). As such, "[t]he *de novo* standard of review . . . applies to our review of the trial court's ruling on a dilatory exception of lack of procedural capacity." *English Turn*, 16-0319, pp. 5-6, 219 So. 3d at 387.

Accordingly, we must determine whether the BZA is an entity such that it may be sued.[4] An entity must be characterized as a juridical person in order to be sued. *Dejoie v. Medley*, 41,333, p. 4 (La. App. 2 Cir. 12/20/06), 945 So. 2d 968, 972; *Dugas v. City of Breaux Bridge Police Dep't*, 99-1320, p. 3 (La. App. 3 Cir. 2/2/00), 757 So. 2d 741, 743. "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." La. C.C. art. 24.

On this juridical determination, the Louisiana Supreme Court espoused:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20.
>
> Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. 1 Sands & Libonati § 2.02. Using such a functional approach, courts have found cities and various other kinds of local government entities to be independent and autonomous, having juridical personality. For example see *Creighton v. City of Santa Monica*, 160 Cal.App.3d

---

[4] Plaintiffs contend that this matter does not equate with a "lawsuit." However, this Court previously characterized a matter seeking a writ of certiorari pursuant to La. R.S. 33:4727 as a "suit." *State ex rel. Phillips v. Bd. of Zoning Adjustments of City of New Orleans*, 197 So. 2d 916, 917 (La. App. 4th Cir. 1967). Further, Plaintiffs' petition, besides requesting a writ of certiorari to the BZA, also requests that the trial court: 1) take new evidence in the matter; 2) reverse the judgment of the BZA; and 3) find that the BZA acted with gross negligence, bad faith, or malice.

6

1011, 207 Cal.Rptr. 78 (2d Dist.1984) (elected rent control board was separate and autonomous from the city); *Kargman v. Boston Water and Sewer Com'n*, 18 Mass.App.Ct. 51, 463 N.E.2d 350 (1984) (commission's corporate attributes or powers establish it as an "independent body politic and corporate" as it has the power to sue and be sued in its own name; acquire, hold, and dispose of real and personal property; make contracts; engage employees and agents and fix their compensation; exercise the power of eminent domain; and exercise such other powers as are necessary to carry out its purposes); *Allis–Chalmers Corp. v. Emmet County Council of Gov'ts*, 355 N.W.2d 586 (Iowa 1984) (constituent local governmental units not responsible for contract of inter-local governmental entity which had its own corporate existence since it has the power to sue and be sued, acquire and dispose of property, enter contracts, fix and charge fees for its services, establish a budgeting system, borrow money and issue bonds, etc ...); *East Montgomery Water, Sewer & Fire Protection Auth. v. Waterworks of Montgomery*, 474 So.2d 1088 (Ala.1985) (city board is separate and independent from the city which it serves (quoting from *Water Works Board of Leeds v. Huffstutler*, 299 So.2d 268 (Ala.1974))).

*Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 346-47 (La. 1994). "Decision-making bodies within a branch of government are not necessarily independent juridical persons." *Dejoie*, 41,333, p. 5, 945 So. 2d at 972.

The BZA was created pursuant to the enabling statute, La. R.S. 33:4727, within which the BZA's characteristics and abilities were specifically enumerated as follows, in pertinent part:

A. (1) The local legislative body may provide for the appointment of a board of adjustment, and in the regulations and restriction adopted pursuant to the authority of R.S. 33:4721 through R.S. 33:4729 may provide that the board may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules contained therein.

(2) The board of adjustment shall consist of five members, and may include two alternate members, all of whom shall be landowners and qualified voters. The

7

membership of the first board shall serve respectively, one for one year, one for two years, one for three years, one for four years and one for five years. Thereafter members shall be appointed for terms of five years each.

(3) Of the two alternate members first appointed, one alternate member shall be appointed for a term of three years and the other for a term of two years. Thereafter each alternate member shall be appointed for a term of three years. Alternate members shall serve only when called upon to comprise a full five-member board when a quorum is present. When so serving, alternate members shall have all the powers and duties of regular members.

(4) All members shall be removable for cause by the appointing authority upon written charges and after public hearings. Vacancies shall be filled for the unexpired term of any member whose term becomes vacant. The board shall elect its own chairman, who shall serve for one year.

(5) The board shall adopt rules in accordance with the provisions of any ordinance adopted pursuant to R.S. 33:4721 through 33:4729; however, any rules adopted by a board of adjustment, zoning administrator, or other official or official body appointed by the governing authority shall not be effective until approved in writing by the governing authority.

\*　　　　\*　　　　\*

C. (1) Meetings of the board shall be held at the call of the chairman and at such other times as the board may determine. The chairman, or, in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses. All meetings of the board shall be open to the public. The board shall keep minutes of its meetings, showing the vote of each member upon each question, or if absent or failing to vote, indicating that fact and shall keep records of its examination and other official actions, all of which shall be filed immediately in the office of the board and shall be public records. All testimony, objections thereto, and rulings thereon, shall be taken down by an auditory recording or by a reporter employed by the board for the purpose.

(2)(a) Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Appeals

shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken, and with the board of adjustment a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken, after all transcript costs and all other costs of appeal are paid by the person or entity taking the appeal, the appellant.

(b) An appeal stays all proceedings in furtherance of the action appealed from, unless the officer from whom the appeal is taken certifies to the board of adjustment after the notice of appeal shall have been filed with him, that, by reason of facts stated in the certificate, a stay would, in his opinion, cause imminent peril of life or property. In such case proceedings shall not be stayed otherwise than by a restraining order that may be granted by the board of adjustment or by a court of record on application or notice to the officer from whom the appeal is taken and on due cause shown.

(c) The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the interested parties, and decide the appeal within a reasonable time. Upon the hearing any party may appear in person or by agent or by attorney.

(3) The board of adjustment shall have the following powers:

(a) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of R.S. 33:4721 through R.S. 33:4729 or of any ordinance adopted thereto.

(b) To hear and decide all matters referred to it or upon which it is required to pass under the ordinance.

(c) In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the ordinance relating to the use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be

observed, public safety and welfare secured, and substantial justice done.

D. (1) In exercising the above mentioned powers the board may, in conformity with R.S. 33:4721 through R.S. 33:4729, reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

(2) The concurring vote of a majority of the members of the board present and voting shall be necessary to reverse any order, requirement, decision, or determination of any administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass under any ordinance, or to effect any variation in the ordinance.

E. (1) Any person or persons jointly or severally aggrieved by any decision by the board of adjustment of any officer, department, board, or bureau of the municipality, may present to the district court of the parish or city in which the property affected is located a petition, duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

(2) Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review the decision of the board of adjustment and shall be prescribed therein the time within which a return may be made and served upon the relator's attorney, that shall be not less than ten days but which may be extended by the court. The party requesting the appeal or writ shall bear the costs of transcribing the auditory recording of the meeting in which the adverse board of adjustment decision was rendered.

(3) The board of adjustment shall not be required to return the original papers acted upon by it, but may return certified or sworn copies thereof or such portions thereof as may be called for by the writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision

appealed from and shall be verified.

(4) If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct, the cost of which shall be borne by the party who initiated the appeal, and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

(5) The court may reverse or confirm, wholly or in part, or may modify the decision brought up for review. Costs shall not be allowed against the board unless it appears to the court that it acted with gross negligence, in bad faith, or with malice in making the decision appealed from. All issues in any proceedings under this Section shall have preference over all other civil actions and proceedings.

The BZA is also attached to the City Planning Commission in accordance with Article V, §5-408 of the Home Rule Charter of the City of New Orleans, which provides:

Section 5-408. - Board of Zoning Adjustments.

(1)Composition. There shall be attached to the Commission a Board of Zoning Adjustments to consist of seven members who shall be domiciled in and electors of the City, appointed by the Mayor with the approval of the Council for a term of five years, staggered so that the term of one or two members shall expire each year. Neither the Director nor any member of the Commission shall be a member of the Board. The Mayor may, by Executive Order approved by the Council in accordance with the procedures established in Section 9-201(2) of this Charter, reassign or attach the functions of the Board to another department or board within the Executive Branch.

(2) Functions. The Board shall:

(a) Hear and determine appeals from applicants who have been refused building permits because of a violation or conflict with the zoning ordinance or the official map of the City.

(b) Hear and decide appeals where error is alleged in any order, requirement, decision, or determination made by an administrative official in the enforcement of the zoning ordinance of the City.

(c) Have the power to permit variations from the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, and procedures specified in and subject to the limitations imposed by the zoning ordinances of the City.

Furthermore, the Louisiana Supreme Court stated:

[t]he Zoning Board of Appeal and Adjustment of the City of New Orleans is solely a creature of statute, its creation being authorized by section 7 of Act 240 of 1926 and being actually created by Ordinance No. 13,649 of the Commission Council Series for the City of New Orleans. The Board has no powers save those conferred upon it by law and such as are implied in the powers so conferred.

*State ex rel. Bringhurst v. Zoning Bd. of Appeal & Adjustment*, 198 La. 758, 761-62; 4 So. 2d 820, 821 (La. 1941).

As detailed above, the BZA is an administrative board with limited powers conferred upon it by statute and the Home Rule Charter. The BZA is not autonomous or self-governing. *See Roberts*, 634 So. 2d at 347. Accordingly, the trial court did not err by granting the City's exception of lack of procedural capacity, as the BZA is not a separate juridical entity distinct from the City.

### INSUFFICIENCY OF SERVICE OF PROCESS

Plaintiffs next contend that the trial court erred by granting the City's declinatory exception of insufficiency of service of process because service was effectuated upon the proper party, the BZA.

Having found that the City was the proper party to be named in a suit against the BZA, the Home Rule Charter denotes that either the Mayor or the City

12

Attorney shall be served when seeking legal process against the City. *See* Article IV, §4-405, City of New Orleans, Home Rule Charter. It is undisputed that Plaintiffs did not serve the Mayor or the City Attorney. Accordingly, the trial court did not err by granting the City's exception of insufficiency of service of process.

### *DISMISSAL WITHOUT PREJUDICE*

Plaintiffs assert that the trial court "erred in dismissing Appellants' Verified Petition for Appeal without prejudice pursuant to" La. C.C.P. art. 1672(C).

La. C.C.P. art. 933(B) provides:

> [w]hen the grounds of the other objections pleaded in the dilatory exception may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court; and the action, claim, demand, issue or theory subject to the exception shall be dismissed only for a noncompliance with this order.

Likewise, La. C.C.P. art. 932(A) states:

> [w]hen the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court; if the court finds, on sustaining the objection that service of citation on the defendant was not requested timely, it may either dismiss the action as to that defendant without prejudice or, on the additional finding that service could not have been timely requested, order that service be effected within a specified time.

Since the lack of procedural capacity and insufficient service of process may possibly be cured by amending the petition and requesting proper service, the trial court erred by failing to allow plaintiffs time to amend pursuant to La. C.C.P. art. 932(A) and 933(B). Accordingly, we vacate the portion of the trial court judgment

13

dismissing Plaintiffs' claims without prejudice and remand the matter to allow Plaintiffs an opportunity to attempt to cure the defects. *See Interdiction of Hunter*, 18-0685, p. 5 (La. App. 4 Cir. 12/19/18), 318 So. 3d 784, 788; *Scott v. Jack's Cookie Co.*, 413 So. 2d 1334, 1336 (La. App. 1st Cir. 1982).

## *DECREE*

For the above-mentioned reasons, we find that the trial court did not err by granting the City's exception of lack of procedural capacity, as the BZA is not a separate and distinct juridical entity apart from the City. Likewise, the trial court did not err by granting the City's exception of insufficiency of service of process because service was not confected upon the City. However, the statutory provisions require that Plaintiffs be given an opportunity to attempt to cure the said defects and we remand the matter to the trial court for same. The judgment of the trial court is affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**