Filed 9/30/14  P. v. Kowitz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL DAVID KOWITZ,<br><br>        Defendant and Appellant. | A139875<br><br>(Marin County<br> Super. Ct. No. CR-136557A) |

On a prior appeal defendant Michael David Kowitz challenged several trial court orders, including an order of victim restitution to be paid to Susan Dean, and an order denying him a refund of fines paid based on excess time he served in presentence custody (hereafter "excess custody credit").  (*People v. Kowitz* (October 22, 2012, A132409) [nonpub. opn.] at pp. 4-5 (*Kowitz I*).)  We found the victim restitution awarded to Susan Dean properly included $5,000 for legal expenses, and remanded to the trial court to determine the dollar amount of defendant's excess custody credit of 267 days.  (*Id.* at pp. 12-13, 17-19.)  On remand a hearing was held after which the trial court denied defendant's motion to modify the amount of victim restitution to be paid to Susan Dean, and determined the dollar amount for excess custody credit was $8,010 ($30 per day for 267 days).  Defendant raises several challenges to the court's order entered on remand, none of which we find requires reversal.  Accordingly, we affirm.

**FACTS**[1]

### 1.    Background

In May 2006, the Marin County District Attorney filed an information charging defendant with the commission of fifteen offenses arising from his criminal conduct against Susan Dean (Susan) and Rena Dean (Rena).[2] The information accused defendant, in pertinent part, of the felony offenses of "stalking" Susan (Pen. Code, § 646.9, subd. (a)[3]) (count 1 – April 1, 2004 to April 16, 2004); "stalking another person" (Susan) while there was a temporary restraining order, order, injunction, and other court order in effect prohibiting such behavior (Marin County Superior Court case number CV041585) (§646.9, subd. (b)) (count 2 –April 16, 2004 to December 1, 2004); "stalking" Rena (§ 646.9, subd. (a)) (count 3 – April 1, 2004 to April 16, 2004); "stalking another person" (Rena) while there was a temporary restraining order, order, injunction, and other court order in effect prohibiting such behavior (Marin County Superior Court case number CV041585) (§ 646.9, subd.(b)) (count 4 – April 16, 2004 to December 1, 2004); and misdemeanor "criminal contempt: disobeying a court order or process" lawfully issued in Marin County Superior Court case number CV041585 (§ 166, subd. (a)(4)) (count 15).[4]

---

[1]    In the absence of any opposition, we grant defendant's request for judicial notice of the following documents and fact: (1) the record and files, including all briefs, filed with this court in *Kowitz I*; (2) the record and files, including the reporter's transcript on appeal, volume 2, filed with this court in *People v. Kowitz* (June 27, 2013; A137407) [nonpub. opn.] (*Kowitz II*)), and (3) that Jonesboro, Arkansas is in Craighead County, Arkansas. We have considered the documents and fact to the extent they are necessary to resolve this appeal.

[2]    Defendant and Susan Dean were married in 2000 and divorced in 2003. Rena Dean is Susan Dean's mother. (*Kowitz I, supra*, at p. 1 & fn. 1.) As we did in *Kowitz I,* and for consistency, we shall refer to Susan and Rena Dean by their first names.

[3]    Further statutory references are to the Penal Code unless otherwise stated.

[4]    Section 646.9, reads, in pertinent part: "¶(a) Any person who willfully maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and

Defendant accepted a plea agreement, pursuant to which he pleaded guilty to stalking, as alleged in count 1 and count 3, in exchange for dismissal of the remaining counts with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754). (*Kowitz I, supra*, at p. 2 & fn. 4.) Prior to sentencing the probation department filed a pre-sentence report (PSR) which set forth the facts underlying the charged offenses. (*Ibid*.) The PSR included a claim form from Susan seeking restitution for $5,000 in legal fees "[g]ranted by courts (Marin & Santa Clara Counties)." At sentencing, defendant was granted supervised probation for a period of five years. As a condition of probation, defendant was required to serve 18 months (545 days) in county jail, which was deemed immediately satisfied based on an award of credit for time served in presentence custody.

Five years later, in 2011, defendant filed a "Request for Court Order Setting Amount of Restitution" (request). In his request, defendant explained his reasons for the delay in seeking a restitution hearing and challenged the victim restitution claimed in the PSR. The trial court (Hon. Terrence R. Boren) held restitution hearings in March and June 2011, resulting in an order sustaining Susan's request for $5,000 for legal expenses as "reasonable and related to the offenses of which defendant was convicted, and the 'Harvey-waivered' counts." In so ruling, the court explained: "On the first day of the hearing on restitution, the court asked the probation officer to attempt to garner further information from Ms. Susan Dean as to the nature of these legal expenses. It appears that in the Marin [County] restraining order case (CV41585), her legal costs were $3,405.66. As noted above (fn. [2] [5]) these proceedings were initiated by Susan Dean in an effort to

___

imprisonment, or by imprisonment in the state prison. [¶] (b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years." Section 166 reads, in pertinent part: "(a) . . .[a] person guilty of any of the following contempts of court is guilty of a misdemeanor: [¶] . . . [¶] (4) Willful disobedience of the terms as written of any process or court order or out-of-state court order, lawfully issued by a court, including orders pending trial." (*Id*., subd. (a)(4).)

5    The trial court took judicial notice of the records in Marin County Superior Court case No. CV041585, and footnote 2, read: "Susan C. Dean vs. Michael David Kowitz,

stop defendant's harassment of her and her mother. The court understands that the balance of the legal fees sought were for the cost of similar proceedings in Santa Clara County Superior Court. (See also PH Tx: 178-179, 201 – testimony regarding the seeking of the restraining order by Ms. Dean.)"[6] Defendant filed timely notices of appeal from the victim restitution order in favor of Susan and the denial of his motion for reconsideration.[7]

---

Filed 4/13/2004; hearings held 4/14/04-5/13/04. At the conclusion of the hearing, the judicial officer granted a restraining order against Defendant Kowitz. (See Counts 4 and 15.)"

[6] At the preliminary hearing held in April 2006, Inspector Michael McBride of the Marin County District Attorney's Office testified he was aware at that time of civil and criminal cases then pending against defendant in Santa Clara County, and Susan reported she was a potential witness in those cases. McBride also testified Susan filed for a restraining order on April 13, 2004 in Marin County, and defendant filed for a restraining order on April 16, 2004 in Santa Clara County. At the restitution hearings, the probation department officer confirmed that Susan's legal expenses arose from two family law matters, one in Marin County and one in Santa Clara County. He testified that Susan "put in two restraining orders. One was . . . granted here by Commissioner Harvey Goldfine, and then one in Santa Clara. Accidentally, [sic] when she went to the State of Arkansas, she actually got another restraining order . . . ." The probation officer also testified that as to Susan's legal expenses incurred in the Marin County proceeding, Commissioner Harvey Goldfine awarded her $2,500 for attorney's fees and costs, but Susan submitted another document that her legal expenses were "$3,405.66, none of which was owed, but was cleared to zero balance by way of a retainer's fee that she put forth, her and her mother."

[7] In support of his motion for reconsideration, defendant submitted a declaration in which he challenged only the trial court's award of legal fees to Susan for the Santa Clara County proceeding. He asserted, in pertinent part, that he had initially filed and obtained a "TRO" against Susan in Family Law Court in Santa Clara County Superior Court to bar her from stalking him and harassing his children. And, that, when asked, Susan had "produced a bill for the legal fees she incurred in 2004 when she retained counsel to oppose [defendant's] TRO (Case No.: 102-FL 103996, County of Santa Clara Superior Court). (Ms. Dean's legal fees are referred by this court at FN #6, p. 8 as: 'the court understands that the balance of the legal fees sought were for the cost of similar proceedings in Santa Clara County Superior Court.') Such similarity is of no moment. I respectfully submit this court misunderstands the purpose for which Ms. Dean incurred what this court describes as the 'balance of legal fees' inasmuch as they are unrelated to an issue stemming from the matters before this court and therefore rewarding her

4

Thereafter, in July 2011, defendant filed a request for "Custody Credit Calculation," arguing he was entitled to reimbursement for moneys he had paid for fines assessed at sentencing because "the number of [presentence] custody credits he earned far exceed[ed] both the jail sentence imposed and all associated fines." In his custody credit calculation request, defendant sought an award of 267 days of excess custody credits. He further asserted "[a] small fraction of these excess credits should have been applied to [his] fines pursuant to Penal Code section 2900.5 at the time of sentencing on July 24, 2006. [8] Unfortunately, [he] has now paid these fines. He should be reimbursed those amounts since his excess custody credits should have, and now may be, applied in satisfaction of the monetary fines."

At a hearing held on July 29, 2011, the trial court (Hon. Terrence R. Boren) ruled it had no authority "to refund fines that have been paid even if a defendant at some point serves time and gets credits that result in an excess of custody credits." At a further

compensation for them is not only an impermissible windfall-payment to the victim, but also unjust." Defendant did not submit any court documents in support of his allegations, and offered an explanation as to why he did not submit to the court his "April 2004 TRO pleadings." Defendant acknowledged the trial court had correctly noted that Susan had incurred legal expenses in Marin County, albeit pertaining to a separate proceeding in which she was represented by different counsel.

[8] At the time defendant was sentenced in 2006 and when he made his request in July 2011, section 2900.5 read, in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, and days served in home detention pursuant to Section 1203.018, shall be credited upon his or her term of imprisonment, or credited to any fine on a proportional basis, including but not limited to base fines and restitution fines, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. . . . In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine on a proportional basis, including, but not limited to, base fines and restitution fines." Since that time, section 2900.5, subdivision (a), has been amended to provide that the dollar amount of excess custody credits may not be applied against "restitution fines." (Stats. 2013, ch. 59, § 7.)

5

hearing after defendant's probation expired, the court ruled that "defendant has 267 days in excess credits." Defendant appealed from the refund request denial of July 29, 2011.

## 2. Appellate Case Number A132409

In our opinion resolving defendant's challenges to the trial court's orders awarding victim restitution to Susan and denying him a refund of paid fines based on excess custody credits, we found no merit to defendant's arguments challenging an award to Susan for legal expenses of $5,000. (*Kowitz I, supra*, at p. 12.) We specifically rejected defendant's contention that Susan could not seek reimbursement for legal expenses incurred in civil proceedings that preceded the current criminal proceeding against defendant. (*Ibid*.) As to the amount awarded, we found the record demonstrated Susan had incurred $2,500 in legal expenses to obtain a restraining order in the Marin County Superior Court, and the PSR stated that Susan also obtained a restraining order against defendant in Jonesboro, Arkansas. (*Id*. at pp. 12-13.) "Because the trial court could reasonably infer that the legal expenses incurred in obtaining the Arkansas restraining order were approximate to those expended in obtaining the Marin County restraining order, the trial court did not abuse its discretion by awarding Susan restitution for the $5,000 claimed in legal fees."[9] (*Id.* at p. 13.)

As to defendant's request for a refund for paid fines based on excess custody credit, we rejected his argument that section 2900.5 allowed for the issuance of a refund because he paid all fines imposed before the full extent of his excess custody credits were assessed by the court. (*Kowitz I, supra*, at p. 18.) We explained that, "Nothing in the language of [section 2900.5] empowers the court to issue a refund against fines already paid, and the trial court properly concluded it was without authority to order such a refund." (*Ibid*.) Nevertheless, we determined the trial court had "a mandatory duty under the statute to *credit* 'all days' of custody against either the term of imprisonment imposed or the fines imposed. (§ 2900.5.)" (*Ibid.*) Although the trial court had determined that

---

[9]     Our statements regarding the nature and amount of legal expenses incurred by Susan in Arkansas were based on information in the PSR and the probation officer's testimony at the restitution hearing on June 8, 2011. (See fn. 6, *ante*.)

defendant had 267 days of excess custody credit, it failed to calculate the dollar amount for the 267 days of excess custody. (*Ibid*.) We remanded with directions to the trial court "to determine the dollar amount of the credit to which defendant is entitled under section 29005." (*Ibid*.) In a footnote, we commented: "Although we conclude that section 2900.5 does not empower the trial court to issue a refund against fines already paid, when the trial court has corrected the judgment to reflect the express custody credit to which defendant is entitled, we do not preclude defendant from filing a claim for a refund pursuant to Government Code section 900 et seq., nor do we express any opinion concerning the merit of any such claim." (*Id*. at p. 19, fn. 15.)

### 3. Trial Court Proceeding on Remand

After the issuance of our opinion in *Kowitz I*, defendant filed two requests in the trial court. On December 5, 2012, defendant submitted a "brief," in which he addressed the issue of the calculation of the dollar amount of 267 days of excessive custody credits. He argued that since 2006 the Marin County Superior Court had consistently exercised its discretion to calculate the dollar amount for excess custody credit at the rate of $100 per day, and an "award" of anything less than $100 per day would violate his right to equal protection of the law under the Fourteenth Amendment to the United States Constitution. Thereafter, on December 10, 2012, defendant filed a motion to modify the amount of victim restitution to be paid to Susan "to correct apparent fraud." He asked the court to modify the award of legal expenses from $5,000 to $2,500 on the ground that an investigation of the court records for cases in Jonesboro, Arkansas, showed that Susan had not applied for a restraining order against defendant in Arkansas. Defendant argued that to the extent any victim restitution was based on legal expenses incurred in Jonesboro, Arkansas, those expenses never were incurred, and therefore, the court should further reduce victim restitution by $2,500.

After a hearing on December 13, 2012, the trial court (Hon. James Chou) ruled on defendant's requests. The court denied defendant's request to modify the amount of victim restitution awarded to Susan for legal expenses. The court explained, "Based on what I have, . . . and primarily in relying on Judge Boren's very detailed restitution order,

7

I am not persuaded that the $5,000 of restitution that was ordered for legal expenses in any way related to any Arkansas proceedings. I think the Court of Appeal was incorrect in reaching that conclusion. Moreover, the Court of Appeal did not even direct this Court to have another hearing on the restitution. It was remanded strictly for purposes of evaluating credits. [¶] So I'm denying the motion to modify the restitution amount. I'm relying on Judge Boren's restitution order which was, as I indicated, very thorough and comprehensive." The court also determined the dollar amount for excess custody credit was $8,010, calculated by applying the statutory rate of $30 a day for 267 days of excess custody credit. The court's December 13, 2012, rulings were ultimately incorporated in an order entered on September 17, 2013. Defendant's timely appeal ensued.

## DISCUSSION

We initially agree with defendant that his right to challenge the September 17, 2013, order has not been waived or forfeited as argued by the Attorney General. After receipt of a copy of our opinion in *Kowitz I*, but before the issuance of the remittitur, the trial court chose to address the issues that we remanded to that court in a hearing that resulted in the entry of an order on December 13, 2012. (*People v. Kowitz II, supra,* at p. 1.) In response to defendant's timely appeal from the December 13, 2012, order, the Attorney General argued the order had to be reversed because the trial court lacked jurisdiction to act before the issuance of the remittitur. (*Id.* at pp. 1-2.) We concurred with the Attorney General, and reversed the December 13, 2012, order. (*Id.* at pp. 2, 3.) In so ruling, we suggested that on remand the trial court in the exercise of its discretion did not need to hold a new hearing, but could reissue its order of December 13, 2012. (*Id.* at p. 3.) The trial court followed our suggestion with the approval of the parties. Counsel indicated the matter would be resubmitted based on the parties' previously-filed papers and arguments made at the December 13, 2012, hearing. By its September 17, 2013, order, the court "reinstated" its previous order, again denying defendant's motion to modify the victim restitution award to Susan, and determining that the dollar amount of the excess custody credit was $8,010, calculated at $30 per day for 267 days. We therefore conclude defendant is entitled to challenge the September 17, 2013, order.

8

Nevertheless, as we now discuss, we conclude he has failed to demonstrate entitlement to any appellate relief.

### 1. Calculation of Dollar Amount for Excess Custody Credit

Section 2900.5 was enacted to give convicted persons credit against their sentences for time previously spent in custody, including credit at the rate of not less than $30 a day for time previously spent in custody, against certain fines imposed at the time of sentence. (See Legis. Counsel's Dig., Assem. Bill No. 3653, 4 Stats. 1976 (1975-76 Reg. Sess.), Summary Dig., p. 274 [Bill amending former § 2900.5, increasing credit against fines from $20 a day to $30 a day].) If there is no term of imprisonment or fine against which the excess custody credit can be applied, section 2900.5 does not allow for a defendant to otherwise receive a monetary award for the excess time served in custody. Nor does the statute provide that any dollar amount calculated for excess custody credit is to be applied as a credit against a monetary award of restitution to be paid to a victim.

Defendant contends the trial court abused its discretion and violated his right to equal protection by calculating the dollar amount for excess custody credits using the statutory rate of $30 a day, instead of $100 a day. He asks us to remand the matter either for a new hearing or with directions to the trial court to calculate the dollar amount of excess custody credit at the rate of $100 a day for 267 days for a total of $26,700. However, when, as here, the trial court has met the statutory requirement, by applying the rate of $30 a day in calculating the dollar amount for excess custody credit, a defendant must make a clear showing of prejudice to establish an abuse of discretion in denying a motion to apply a rate greater than $30 a day. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 160.) Defendant has not and cannot meet his burden of demonstrating prejudice as any calculation of the dollar amount of excess custody credits using a rate higher than $30 a day would have no practical effect. In his opening brief on his prior appeal defendant conceded that any refund he might be due for fines he paid would be "sufficiently covered" by calculating the dollar amount for the excess custody credit by using the statutory rate of $30 a day for 267 days for a total of $8,010. When we remanded the matter for the calculation of the dollar amount for the excess custody

9

credit, we anticipated there would be no dispute regarding the use of the statutory rate and the court would amend its order to include a dollar amount of $8,010 by using the statutory rate of $30 a day for 267 days of excess custody credit. Neither in the trial court on remand nor on this appeal did defendant make any new argument that $8,010 will not sufficiently cover any refund he might be due for fines he paid as part of his sentences. In light of determination that defendant has not demonstrated prejudice arising from the trial court's ruling, we see no reason to further address his arguments that the trial court either abused its discretion or violated his constitutional right to equal protection. "[E]ven though a constitutional question may be legitimately presented by the record, if the record also presents some other and satisfactory ground upon which a court may rest its judgment and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutionality will be left for consideration until the case arises which cannot be adjudicated without considering it." (*People v. Barton* (1963) 216 Cal.App.2d 542, 546.)

## 2. Motion to Modify Victim Restitution Award to be Paid to Susan

Defendant also challenges the trial court's denial of his motion to modify the victim restitution award to Susan by reducing the award for legal expenses from $5,000 to $2,500. He asks us to set aside the award of legal fees of $5,000, and remand the matter with directions to the trial court to reconsider his motion for modification. We conclude defendant's challenge is unavailing and deny his request for appellate relief. In support of his modification motion, defendant relied on evidence that called into question our ruling that Susan had incurred legal expenses for obtaining a restraining order against defendant in Arkansas. Because Susan had not sought to recover for any legal expenses for a proceeding in Arkansas, the trial court reasonably found that an award for such legal expenses in that state was incorrect. The trial court also reasonably concluded that even if Susan was not entitled to recover for legal expenses incurred in Arkansas, defendant had failed to demonstrate to the court's satisfaction that Judge Boren's award of $5,000 for legal expenses could not be upheld based on Susan's claim for legal expenses incurred in Marin County and Santa Clara County proceedings. In so ruling, the trial

court could consider that defendant had failed to submit any court documents that called into question Judge Boren's findings that Susan was entitled to be paid $5,000 for legal expenses incurred in Marin County and Santa Clara County proceedings. We are not persuaded by defendant's argument that the trial court should have found that we had previously "necessarily rejected" Judge Boren's finding regarding Susan's request for legal expenses incurred in the Santa Clara County proceeding. In our opinion in *Kowitz I* we upheld the award of legal expenses of $5,000 based on evidence regarding proceedings in Marin County and Arkansas. (*Kowitz I, supra*, at pp. 12-13.) Because we did not mention the Santa Clara County proceeding, the trial court could reasonably find that our opinion in *Kowitz I* was not dispositive support for defendant's assertions that Susan was not entitled to be paid for legal expenses incurred in the Santa Clara County proceeding. (See *Cicairos v. Summit Logistics, Inc*. (2005) 133 Cal.App.4th 949, 957 ["[c]ourts applying precedent cannot peek behind the opinion to earlier proceedings to *enlarge the meaning of the opinion* based on what happened in the trial court but was not recounted by the appellate court" (italics added)].)

In sum, we conclude that the trial court's September 17, 2013, order should be affirmed as defendant has failed to demonstrate any error that requires us to reverse and remand the matter for further proceedings.

## DISPOSITION

The order of September 17, 2013, is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

11